UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARONTE TYRONE LEWIS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>S. SHERMAN, S. SMITH, FNU SMITH, FNU JOHNSON, FNU PIPER, NIKKI JOHNSON, J. JIMENEZ, STATE OF CALIFORNIA, CDCR,<br><br>　　　　　Defendants. | Case No. 1:20-cv-00574-HBK (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO ASSIGN CASE TO DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS[1]<br><br>(Doc. No. 54)<br><br>FOURTEEN-DAY DEADLINE |

　　　Pending before the Court is a motion to dismiss filed on behalf of Defendants Warden Stewart Sherman, Associate Warden S. Smith, Lieutenant Smith, Captain Johnson, Sergeant Piper, Transport Officers Nikki Johnson and J. Jimenez, the State of California, and the California Department of Corrections and Rehabilitation ("CDCR") on January 14, 2021. (Doc. No. 54). After the Court afforded Plaintiff an enlargement of time, Plaintiff filed a response opposing Defendants' Motion on February 10, 2021. (Doc. Nos. 66, 73). Defendants' motion is ripe for review.

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Eastern District of California Local Rule 302 (E.D. Cal. 2019).

# I. BACKGROUND

**A. The Complaint and Attachments**

Plaintiff Daronte Tyrone Lewis is a prisoner incarcerated within the California Department of Corrections and Rehabilitation ("CDCR") who was housed at the California Substance Abuse Treatment Facility ("CSATF") at the relevant time of the events alleged in his *pro se* Complaint filed under 42 U.S.C. § 1983 on April 14, 2020. (Doc. No. 1, "Complaint"). The Complaint named the State of California, Governor Gavin Newsom, Secretary of CDCR, Connie Gibson, Direction of CDCR, Stuart Sherman, Warden, CSATF, S. Smith, Ass't Warden, CSATF, Lieutenant Smith, Captain Johnson, Sergeant Piper, Nikki Johnson, Transport Officer, and J. Jimenez, Transport Officer. (*Id*. at 2-3). "Every Defendant" is sued in their individual and official capacity. (*Id.* at 1).

The following facts are alleged in the Complaint and presumed true at this stage of the proceedings. Plaintiff is a wheelchair-bound inmate. (*Id*.). The incident giving rise to the cause of action occurred on February 28, 2019 when transport officers, Defendants Johnson and Jimenez, allegedly knowingly failed to secure Plaintiff's wheelchair properly in a transport van and then Johnson drove recklessly. (*Id.* at 6). As a result, Plaintiff alleges he fell over in the wheelchair in the transport van and sustained injuries. (*Id.*). Plaintiff further claims that Warden S. Smith, Lieutenant Smith, Captain Johnson and Sergeant Piper all inspected the van—or were informed of the result of the van inspection—and were thus aware that Plaintiff and other wheelchair bound inmates could not be safely secured during travel. (*Id.* at 7).

Plaintiff's attachments to the Complaint reflect similar factual allegations concerning the transport and his injuries as a result therefrom. (*See generally Id.* at 15-43). Plaintiff reiterates he entered the transport van on a wheelchair, there was no way to secure the wheelchair inside the transport van, and instead the transport officer directed "throw on ya brakes of wheelchair [.] [W]e out." (*Id.* at 19).

An initial memo dated March 1, 2019 reflected correctional officials' belief that Plaintiff "'staged this event.' He brought light to the lack of seatbelts prior to transport, and fell out of his wheelchair, when the vehicle was no longer moving to prove his point." (*Id.* at 32). The officers'

2

statements testified that when the van was stopped, they heard a noise, indicating Plaintiff fell when the vehicle was stopped, and that his wheelchair was secured with "floor hooks" in the van. (*Id.*at 33-34).  Further, as noted in this memorandum, correctional officials opined that the transport officers' "good faith" was evidenced by Plaintiff's transport "without delay" to the medical department following the transport.  (*Id.* at 32).  Following an internal prison appeal, a November 14, 2019 amended memorandum issued by CDCR "partially granted" the appeal and determined staff "did violate CDCR policy with respect to at least one of the issues raised." (*Id.* at 25-26).

      Plaintiff attaches to his Complaint a May 10, 2019 letter from the Prison Law Office CDCR that they "have received several reports" from SATF "about unsafe transportation." (*Id*. at 35). The letter specifically referenced Plaintiff's claim and requested correctional officers to complete training in compliance with *Armstrong*[2] regarding transport of wheelchair bound inmates due to the complaints the legal group received.  (*Id.* at 35-36).  In their correspondence dated June 14, 2019 to Plaintiff, the Prison Law Office noted they had received a response from CDCR in which correctional officials acknowledged securing the wheelchair to the van, but not securing Plaintiff's body.  (*Id.* at 39-40).  Additionally, the response indicates correctional staff completed training on this matter on May 31, 2019.  (*Id.*).

**B.  The Screening Order**

      The previously assigned magistrate judge issued a Screening Order under 28 U.S.C. § 1915A finding the Complaint stated a plausible Eighth Amendment claim against the transport officers, Jimenez and Johnson, stemming from their inadequate securing of Plaintiff's wheelchair in the transport van and Johnson's reckless driving.  (*Id*. at 4).  The Screening Order also found a plausible claim against Warden Stuart Sherman, Associate Warden S. Smith, Lieutenant Smith, Captain Johnson, and Sergeant Piper based on allegations that they previously inspected the van, knew it was not safe for wheelchair-bound inmates, but nevertheless permitted use of the van for wheelchair-bound inmates.  (*Id.*).   The Screening Order also found a cognizable claim under the Americans with Disabilities Act and the Rehabilitation Act against the State of California and the

---

[2] *Armstrong v. Brown*, 103 F.Supp.3d 1070 (N.D. Cal. Feb. 3, 2015).

CDCR stemming from the denial of safe travel because the prison lacked a van that could safely accommodate Plaintiff who is a wheelchair-bound inmate. (*Id.* at 5, 6).

The Screening Order found no cognizable claims as to: Defendants Governor Gavin Newsom, CDCR Secretary Ralph Diaz, and CDCR Director Connie Gipson and recommended their dismissal. (*Id.* at 4-5). And the Screening Order recommended dismissal of any claims arising under California's Unruh Civil Rights Act finding a "prison" was not a "business establishment" as required under the Act. (*Id.* at 5-6). Following the Screening Order, Plaintiff filed a Notice of Voluntary Dismissal noting that he wished to proceed only on those claims "sanctioned by the Court" and to "voluntarily dismiss all other defendant(s) and all other claims not sanctioned by this Court." (*See* Doc. No. 22 at 2).

**B. Defendants' Motion to Dismiss**

Defendants Warden Stuart Sherman, Assistant Warden S. Smith, Lieutenant Smith, Captain Johnson, Sergeant Piper, Transport Officer Nikki Johnson and Transport Officer J. Jimenez, and the State of California, by and through the CDCR, (collectively "Defendants") move to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Doc. No. 54).

First, recognizing that Plaintiff sues the individually named Defendants in both their official and individual capacities, Defendants argue Eleventh Amendment immunity precludes an award of monetary damages against state officials in relation to Plaintiff's Eighth Amendment claim. (*Id.* at 4-5). Defendants concede Plaintiff may seek injunctive relief against the individual Defendants in their official capacities. (*Id.* at 5). Defendants, however, argue Plaintiff's Complaint is deficient because it fails to allege that a policy or practice of the CDCR caused Plaintiff's injuries under the Eighth Amendment. (*Id.*)

Second, Defendants argue that to the extent Plaintiff sues the CDCR and the State of California for monetary compensation for violations under the Americans with Disability Act, the Rehabilitation Act, and California Government Code § 11135, the suit is only properly brought against "the State of California by and through the CDCR." (*Id*. at 6). Regarding Plaintiff's claims under California Govt. Code §815(b), Defendants argue that plaintiffs pursuing these state claims are required to exhaust their claims before the public entity before filing a lawsuit, and the

4

failure to do so precludes the future lawsuit. (*Id*.) (citing *Peterson v. City of Vallejo*, 259 Cal. App.2d 757, 767-770 (1968)). Defendants argue that a plaintiff is required to plead compliance with the claim's requirements in the complaint. (*Id*. at 7). Defendants point out that Plaintiff only "references compliance and exhaustion of CDCR administrative grievances and is silent as to whether a claim was filed in accordance with the Act, and if so when it was rejected." (*Id*. at 7). Defendants argue that due to Plaintiff's failure to properly plead compliance with the Act, the Complaint fails to state a cognizable cause of action, and that claim should be dismissed. (*Id*.).

## II. STANDARD OF REVIEW

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Federal Rule of Civil Procedure 12(b)(1) allows for a motion to dismiss based on lack of subject matter jurisdiction. It is a fundamental precept that federal courts are courts of limited jurisdiction. *Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *A-Z Int'l v.* Phillips, 323 F.3d 1141, 1145 (9th Cir, 2003); *Fifty Associates v. Prudential Ins. Co.*, 446 F.2d 1187, 1190 (9th Cir. 1970). The plaintiff has the burden to establish that subject matter jurisdiction is proper. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Vacek,* 447 F.3d at 1250.

A Rule 12(b)(1) motion may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence. *Wolfe v. Strankman,* 392 F.3d 358, 362 (9th Cir. 2004); *Savage v. Glendale Union High School Dist. No. 205,* 343 F.3d 1036, 1039 n .2 (9th Cir. 2003). When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself. *See Wolf,* 392 F.3d at 362; *Miranda v. Reno,* 238 F.3d 1156, 1157 n. 1 (9th Cir.2000); *Thornhill Publishing Co. v. General Telephone Electronics,* 594 F.2d 730, 733 (9th Cir.1979). The failure to make proper and complete factual allegations of jurisdiction fails to show standing and relegates a litigant to "jurisdictional purgatory." *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Fifty Associates,* 446

F.2d at 1190. "A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Smith v. McCullough,* 270 U.S. 456, 459, 46 S.Ct. 338, 70 L.Ed. 682 (1926); *Fifty Associates,* 446 F.2d at 1190.

Turning to Rule 12(b)(6), a motion to dismiss for failure to state a claim under this section tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). While *pro se* complaints are held to "less stringent standards," than those drafted and filed by attorneys, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Federal Rules of Civil Procedure 8 and 10 still apply to *pro se* actions. A complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A complaint is plausible on its face when it contains sufficient facts to support a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Service*, 572 F.3d at 962, 969 (9th Cir. 2009).

At this stage of the proceedings, the Court accepts the facts stated in the Complaint as true. *Hosp. Bldg. Co. v. Rex Hosp. Tr.*, 425 U.S. 738, 740 (1976). The Court does not accept as true allegations that are merely conclusory or are based on unreasonable inferences or unwarranted deductions. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Nor do legal conclusions qualify as facts. *Iqbal*, 556 U.S. at 678. Because plaintiff is *pro se*, the Court liberally construes the pleading in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003). Further, a Court's finding that a complaint states a cognizable claim at screening under 28 U.S.C. § 1915A does not preclude the court from dismissing the complaint later for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See Easley v. Pinnell*, 182 F.3d 924, n. 3 (9th Cir. 1999) (discussing in a footnote that the court's determination the complaint stated non-frivolous claims under § 1915A at screening did not prelude subsequent dismissal for failure to state a

claim); *Coleman v. Maldnado*, 564 F. App'x 893, 894 (9th Cir. 2014) (a district court may still properly grant a motion to dismiss despite a prior screening order finding the complaint stated a claim).

In ruling on a motion to dismiss, the Court may consider only the complaint, any exhibits attached thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir. v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc*., 12 F.Supp.2d 1035, 1042 (C.D. Cal. 1998).

### III. APPLICABLE LAW AND ANALYSIS

**A. Eighth Amendment, Eleventh Amendment Immunity, and Injunctive Relief**

At the outset Defendants argue Eleventh Amendment immunity precludes a monetary award from the individual Defendants in their official capacity in relation to Plaintiff's Eighth Amendment claim. (Doc. No. 54 at 4-5). Defendants concede that Plaintiff may seek injunctive relief against the Defendants in their official capacities. (*Id.* at 5). Defendants, however, argue Plaintiff's Complaint is deficient because it fails to allege a policy or practice of CDCR caused Plaintiff's injuries arising under the Eighth Amendment. (*Id.*)

The Eleventh Amendment, also referred to as sovereign immunity, precludes certain suits by citizens against their own states in federal court. *Board of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 363 (2001); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996). It is well established that Congress did not intend to abrogate a state's Eleventh Amendment immunity in § 1983 damage suits. *Quern v. Jordan*, 440 U.S. 332, 340-45 (1979). Additionally, California has not waived its sovereign immunity or consented to be sued in damages suits brought pursuant to § 1983. *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999) (citations omitted).

In other words, due to Eleventh Amendment immunity, a plaintiff may not seek monetary damages against the state, or against a governmental officer in his or her official capacity because such an action is essentially against the government official's employer. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Thus, Plaintiff cannot seek monetary damages from Defendants in

7

their official capacities because the Eleventh Amendment precludes such relief.[3]

To the extent Defendants argue Eleventh Amendment immunity precludes Plaintiff from seeking monetary damages against state officials in their official capacities, the Court agrees. In all other respects, the Court is not persuaded by Defendants' arguments regarding Plaintiff's ability to seek injunctive relief and whether his Complaint contains sufficient facts of a custom or practice to attribute liability against Defendants in their official capacities.

As stated above, lawsuits against state officials in their official capacity are essentially the same as a lawsuit against the state. *Graham*, 473 U.S. at 165; *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991). A plaintiff seeking injunctive relief against the state is not required to allege a named official's personal involvement in the acts or omissions that caused the alleged constitutional violation. *See Hartmann v. California Dep't of Corr. and Rehab*, 707 F.3d 1114, 1127 (9th Cir. 2013) (citing *Hafer*, 502 U.S. at 25; *Graham*, 473 U.S. at 166). Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the office within the entity who can appropriately respond to injunctive relief. *Id.* (citing *LA. Cnty. v. Humphries*, ___ U.S. ____, 131 S.Ct. 447, 452 (2010) (other citations omitted)).

To pursue an official capacity claim, a plaintiff must allege that a custom or policy was the "moving force" behind the violation. *Monell v. Dept' of Soc. Services of City of New* York, 436 U.S. 658, 690 (1978) (finding local government officials and municipalities sued in their official capacities are "persons" under § 1983, but to allege such a claim an official policy or custom must be the moving force). To establish liability, a plaintiff must show: (1) deprivation of a constitutional right; (2) a policy; (3) the policy amounted to deliberate indifference to a constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Mabe v. San Bernardino County, Dep't of Pub. Soc. Services*, 237 F.3d 1101, 1110-11 (9th Cir. 2001) (citations omitted). A plaintiff may establish the existence of a policy by introducing evidence of a "longstanding practice or custom which constitutes the standard operating

---

[3] The Eleventh Amendment does not, however, preclude suits in federal courts against state officials in their individual capacities. *Hafer*, 502 U.S. at 25. Thus, to the extent that Plaintiff's Complaint is brought against Defendants in their individual capacities, Eleventh Amendment immunity is inapplicable.

procedure" of the entity. *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (citations omitted). Liability cannot be predicated on isolated incidents; it must be founded upon practices of sufficient duration, frequency, and consistency. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Here, the Complaint contains sufficient factual allegations that Defendants, sued in both their individual and official capacities, did not have proper restraints in the transport van on more than one occasion before Plaintiff's transport on February 28, 2019, and this deficiency contributed to Plaintiff's alleged constitutional violation. As noted in the Court's Screening Order, according to the Complaint, Warden Sherman, Associate Warden Smith, Lieutenant Smith, Captain Johnson, and Sergeant Piper previously inspected the van, knew it was not safe for wheelchair bound inmates, but nevertheless permitted use of the van for wheelchair bound inmates. Plaintiff also alleges he asked the transport officers to safely secure him and his wheelchair prior to transport. (*Id.* at 4). Further, the Prison Law Office letter attached to the Complaint notes it received "*reports*" and were concerned about inmates' complaints that the transport van did not have proper restraints. (*Id.* at 35-36) (emphasis added). Nowhere does Plaintiff allege this was the first time he was transported in this van, or the first time the van was driven, thereby permitting the reasonable inference from the facts that continuing use of the transport van in this condition without proper restraint devices arguably was a custom or practice. (*See generally Id.*).

Alternatively, a reasonable inference can be drawn from the alleged facts that correctional officials did not have a policy regarding transporting wheelchair bound inmates that required use of restraints for the wheelchair and/or for the inmates seated in the wheelchair, or that the policy it did have was violated. The failure to have a policy regarding how a wheelchair bound inmate must be safely secured and transported in a transport van is sufficient at this stage of the proceedings to pursue an official capacity claim against correctional officials for injunctive relief.

Courts have found allegations that correctional officials recklessly drove while transporting a shackled inmate, who did not have a seatbelt, state an Eighth Amendment claim. *See Brown v. Fortner*, 518 F.3d 552 (8th Cir. 2008) (finding an Eighth amendment claim when

9

transport officers drove recklessly, did not belt the Plaintiff, and caused injuries); *Rogers v. Boatright*, 709 F.3d 403 (5th Cir. 2013) (finding prisoner's allegations that he was injured during transport from prison to medical appointment in prison van stated a claim at screening when transport officers operated the vehicle recklessly and had to brake suddenly to avoid collision, causing prisoner-plaintiff injuries); *Scott v. Becher*, 736 F. App'x 130, 133-134 (6th Cir. 2018) (finding no reasonable correctional officer could have believed it was lawful to use a vehicle maliciously to inflict harm by driving above the speed limit, swerving, and hitting a bump, causing inmates inside, who were not belted, to go airborne and therefore denying qualified immunity to defendants).

Indeed, "[a] 'rough ride' is 'a peculiarly cruel means of punishment, as [it] is designed to place the victim in fear for his life. Not only is the prisoner not able to protect himself, but motor vehicles, unlike a controlled spray or direct application of force, are not designed for use as a means of securing compliance or otherwise subduing a prisoner." *Scott*, 736 F. App'x at 134 (citing *Thompson v. Commonwealth of Virginia*, 878 F.3d at 89, 103 (4th Cir. 2017)). Thus, the facts alleged in the Complaint are sufficient at this stage of the proceedings to plausibly state a claim for injunctive relief against defendants in their official capacities.

### B. Proper Defendant in RA/ADA Claim

Defendants argue that to the extent Plaintiff sues the CDCR and the State of California for monetary compensation for violations under the Americans with Disability Act ("ADA", the Rehabilitation Act ("RA"), and California Government Code § 11135, the suit is only properly brought against "the State of California by and through the CDCR." (Doc. No. 54 at 6).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. While the RA has the additional requirement that the program or activity receive federal funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act. Thus, courts have applied the same analysis to claims brought under both statutes." *Zukle v. Regents of the Univ. of*

10

*California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (internal citations omitted).

Specifically, to state a claim under Title II of the ADA, Plaintiff must allege that:

> (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

*McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (alteration in original).

The proper defendant in an ADA action is the public entity responsible for the alleged discrimination. *U.S. v. Georgia*, 546 U.S. 151, 153 (2006). State prisons are "public entities" within the meaning of the ADA. *See Id.* (citing 42 U.S.C. § 12131(1)(A) & (B); *Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)); *see also Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997). Additionally, a state official sued in his or her official capacity is, in effect, a suit against the government entity and is an appropriate defendant in an ADA action. *See Georgia*, 546 U.S at 154; *Duffy*, 98 F.3d at 452; *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

The Court agrees in part with Defendant that the proper defendant is the "State of California by and through the CDCR." Notably, the Court's screening order disposed of claims against the CDCR Secretary and Director. The Complaint, however, names correctional officials in their official capacities. Thus, for all intents and purposes, naming Defendants in their official capacities amounts to a suit against the government entity that employs that person. Thus, Plaintiff's Complaint alleging ADA/RA claims proceeds against the CDCR by virtue of naming CDCR officers in their official capacities.

**C. California Government Claims Act**

Turning to the claims under California Govt. Code §815(b), Defendants argue that a plaintiff pursuing these state claims is required to exhaust his or her claims before the public entity before filing a lawsuit, and the failure to do so precludes the future lawsuit. (Doc. No. 54 at 6-7) (citing *Peterson v. City of Vallejo*, 259 Cal. App.2d 757, 767-770 (1968)). Significantly, Defendants argue that a plaintiff is required to affirmatively plead compliance with the claim's

11

requirements in the complaint. (*Id*. at 7). Defendants point out that Plaintiff only "references compliance and exhaustion of CDCR administrative grievances and is silent as to whether a claim was filed in accordance with the Act, and if so when it was rejected." (*Id*.). Defendants contend Plaintiff's failure to affirmatively plead compliance with the Act results in the Complaint's failure to state a cognizable cause of action under the Act, and therefore should be dismissed because the Court lacks jurisdiction under Rule 12(b)(1). (*Id*.).

Indeed, as a condition precedent to suit against a public entity, the California Tort Claims Act (CTCA) requires "timely presentation of a written claim and the rejection of the claim in whole or in part." *Mabe v. San Bernardino County, Dep't of Pub. Soc. Services*, 237 F.3d 1101, (citations omitted); *see also Williams v. Acala*, Case No. 1:17-cv-00916-DAD-SAB, 2018 WL 4039954, at *1 (E.D. Cal. Aug. 22, 2018) (denying plaintiff's motion for reconsideration when plaintiff filed a written claim after magistrate judge issued findings and recommendations dismissing state claims due to plaintiff's noncompliance with act and untimely filing).

While Plaintiff's Complaint does not expressly state compliance with the CTCA, his Complaint states he "exhausted remedies" on the page of his Complaint in which he alleges his ADA, RA and state claims. (*See* Doc. No. 1 at 8 in bottom righthand corner). Further, in his opposition, Plaintiff attaches copies of his state government tort claim act forms presented on March 29, 2019 and responses from the California Department of General Services denying Claim No. 19003147 dated April 11, 2019, April 12, 2019 and May 8, 2019. (Doc. No. 73 at 57-69).

Thus, accepting the allegations in the Complaint as true, Plaintiff affirmatively claims he "exhausted" all his remedies for his state tort claims. Liberally construed, Plaintiff avers compliance with the CTCA. This is further evidenced by the government tort claims forms included in Plaintiff's opposition. At this stage of the proceedings, Defendants' motion to dismiss these claims is denied without prejudice.

**D. Plaintiff's Voluntary Dismissal of Certain Defendants**

As stated *supra*, following the Court's Screening Order, Plaintiff filed a notice agreeing to proceed on those claims "sanctioned by the court" and to "voluntarily dismiss all other

defendant(s) and all other claims not sanctioned by this Court." (*See* Doc. No. 22 at 2). The Court construes Plaintiff's notice to be a notice of voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(A)(i).

Fed. R. Civ. P. 41(a)(1)(A)(i) provides for a voluntary dismissal "*without a court order*" when plaintiff files a notice of voluntary dismissal before the opposing party serves either an answer or a motion for summary judgment. *Id.* (emphasis added). A review of the docket reveals Defendants Governor Gavin Newsom, CDCR Secretary Ralph Diaz, and CDCR Director Connie Gipson have not answered or filed a motion for summary judgment. (*See* docket). Such a dismissal is without prejudice, unless stated otherwise. Fed. R. Civ. P. 41(a)(1)(B).

Accordingly, it is **ORDERED**:

The Clerk shall assign this case to a district court judge.

It is further **RECOMMENDED**:

1. Pursuant to Plaintiff's Notice of Voluntary Dismissal filed under Fed. R. Civ. P. 41(a)(1)(A), the Clerk of Court shall edit the docket to reflect the Plaintiff's voluntary dismissal of Defendants Governor Gavin Newsom, CDCR Secretary Ralph Diaz, and CDCR Director Connie Gipson, without prejudice.

2. The motion to dismiss (Doc. No. 54) filed on behalf of Defendants Sherman, Associate Warden Smith, Lieutenant Smith, Johnson, Piper, Transport Officer Johnson, and Transport Officer Jimenez, and State of California, by and through CDCR, is GRANTED in part and DENIED in part as follows: (a) the motion be GRANTED to the extent that Plaintiff may not seek monetary damages against defendants named in their official capacities; (b) in all other respects, the motion be DENIED without prejudice.

**NOTICE TO PARTIES**

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Parties are advised that failure to file objections within the

specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:    September 2, 2021

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE


14